UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

GERALD W. HALCSIK,

          Plaintiff,

                                      Case No. 20-cv-317-pp

   v.

GRACE E. KNUTSON,

          Defendant.

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (DKT. NO. 8), DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (DKT. NO. 14) AND GIVING PLAINTIFF OPPORTUNITY TO FILE AMENDED COMPLAINT**

## I.    Introduction

On February 26, 2020, the plaintiff, who is on extended supervision by the Wisconsin Department of Corrections, sued the director of sex offender programs for the DOC under 42 U.S.C. §1983, alleging that the Wisconsin statute which required him to register as a sex offender violates his Fourteenth Amendment right to substantive and procedural due process. Dkt. No. 1.

On May 1, 2020, the defendant filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Dkt. No. 8. The court held a hearing over a year ago; the motion has long been ready for resolution. On September 17, 2021, the plaintiff filed a motion for injunctive relief, asking the court to enter a preliminary injunction prohibiting the defendant "from continuing to enforce Wis. Stat. §201.45(1d)(b) against him." Dkt. No. 14. That motion is fully briefed and also is long due for resolution.

1

This order grants the defendant's motion to dismiss the substantive and procedural due process claims in the complaint and gives the plaintiff a deadline of April 22, 2022 by which to file an amended complaint alleging a Fourth Amendment violation regarding the requirement that he be subject to lifetime GPS monitoring. It also denies the plaintiff's motion for injunctive relief.

## II.     **The Motion to Dismiss (Dkt. No. 8)**

### A.     The Allegations in the Complaint (Dkt. No. 1)

In 2009, the plaintiff pled guilty to one count of residential burglary in violation of Wis. Stat. §943.10(1m)(a) and two counts of false imprisonment in violation of Wis. Stat. §940.30. Dkt. No. 1 at ¶7. He was sentenced to ten years in prison and eight years of extended supervision; he was released to begin that term of extended supervision on January 1, 2019. Id.

The complaint alleges that in August 2006, the plaintiff and a co-defendant committed a residential burglary. Id. at ¶8. The plaintiff asserts that during the burglary, his co-defendant "forced two minors into an attic and placed a dresser in front of the attic door." Id. The plaintiff alleges that at the time this happened, the plaintiff was downstairs "and unaware it had occurred." Id. He asserts that "[t]here is no evidence that the crime of locking the minors in the attic was sexually motivated or involved any sexual component by either [the plaintiff] or his co-defendant." Id.

The plaintiff was convicted of two counts of false imprisonment under Wis. Stat. §940.30. Id. at ¶7. Under Wis. Stat. §301.45(1d)(b), a violation of

2

§940.30 constitutes a "sex offense" requiring the offender to register "if the victim was a minor and the person who committed the violation was not the victim's parent." The plaintiff contends that "[s]olely because of the false imprisonment convictions," he is required to register as a sex offender. <u>Id.</u> at ¶9. He explains that because he has two convictions for false imprisonment from the single event, he is "automatically deemed to be a Special Bulletin Notification offender (SBN), pursuant to Wis. Stats 301.46(2m)(am)(1) . . . ." <u>Id.</u> at ¶10. This means that he is "(a) subject to lifetime GPS monitoring pursuant to Wis. Stat. §301.48(2)(a)(7); and (b) subject to 'community notification,' which allows the police chief or sheriff in the community in which Plaintiff resides to notify residents in the community of his presence there. See §301.46(2m)(c)." <u>Id.</u> The plaintiff alleges that his designation as a sex offender subjects him to "an array of statutory and administrative restrictions," including the financial obligations attendant to lifetime sex offender registration, being subject to criminal penalties if he fails to register, the lifetime GPS requirement and its attendant financial obligations and supervised release conditions such as a prohibition on contact with minors and being barred from locations such as schools. <u>Id.</u> at ¶12.

The plaintiff says that he never has been charged with or convicted of any kind of sexual misconduct. <u>Id.</u> at ¶11. He explains that while he was in custody, he earned a horticultural vocation certificate from Western Technical College. <u>Id.</u> at ¶13. He says that he has been drug-free for almost thirteen years and is on the board of his district's Alcoholics Anonymous group, serving as a

community professional coordinator and public information chair. Id. at ¶14. He has a full-time (more than full-time, at fifty-five hours a week) job as a quality control inspector at an engineering firm. Id. at ¶15. The plaintiff alleges that because of the requirement that he register as a sex offender, he has been stigmatized, has lost job opportunities and has been humiliated. Id. at ¶16.

The complaint asserts two claims. First, the plaintiff alleges that the statute's requirement that he register as a sex offender violates his right to substantive due process under the Fourteenth Amendment because the requirement that he register "bears no rational relationship to the legislative purpose of protecting the public from those who have committed sexually-based offenses." Id. at ¶20. Second, he alleges that the requirement violates his right to procedural due process under the Fourteenth Amendment because the reputational injury and impairments of his other interests deprive him of a liberty interest, and he says he was given no opportunity to challenge his designation as a sex offender. Id. at ¶¶22-25.

The plaintiff seeks a declaratory judgment that the portion of Wis. Stat. §301.45(1d)(b) that requires an individual convicted of false imprisonment under the circumstances described in the statute to register as a sex offender is unconstitutional on its face and as applied. Id. at ¶¶20, 25. He seeks preliminary and permanent injunctive relief prohibiting the defendant from enforcing the statute against him and others similarly situated to him. Id. Finally, he seeks fees and costs. Id.

4

B.    The Parties' Arguments

      1.    *The Defendant's Motion to Dismiss (Dkt. No. 8)*

The defendant begins by recounting the legislative history of the Wisconsin sex offender registry. Dkt. No. 9 at 5. She explains how 1995 Wis. Act 440 added the crime of false imprisonment of a minor as a qualifying offense effective June 1997. Id. She indicates that the addition of false imprisonment of a minor to the list of offenses requiring registration followed federal passage of the Jacob Wetterling Act, 42 U.S.C. §14071, and describes that statute and its legislative history. Id. at 5-8. In particular, she asserts that the legislative history of Act 440 "also reflects the legislative purpose to protect children by making a broader array of crimes eligible for registry, including those for which a sexual motive may not be immediately apparent." Id. at 7.

The defendant asserts that the court must dismiss the plaintiff's substantive due process claim because the legislature had a rational basis for including false imprisonment of a minor by a non-parent as a qualifying offense for sex offender registration. Id. at 10-11. The defendant asserts that the court must use the rational basis standard of review, id. at 11-12, reminds the court that such review is highly deferential, id. at 13, and asserts that Wisconsin's inclusion of false imprisonment of a minor as a qualifying offense was an attempt to bring the Wisconsin sex offender statute in line with the Jacob Wetterling Act, id. at 13-16. The defendant argues that the majority of courts that have addressed the issue have rejected challenges such as the plaintiff's. Id. at 16-17. She argues that the minority of courts that have found that

5

substantive due process requires an individualized assessment of each defendant's sexual dangerousness are distinguishable. Id. at 18-19.

The defendant also argues that the court must dismiss the plaintiff's procedural due process claim because the plaintiff received the process he was due in his criminal proceedings. Id. at 20. The defendant identifies Supreme Court and Seventh Circuit precedent that she says make clear that there is no procedural due process violation when the requirement to register as a sex offender flows from a criminal conviction where the offender was afforded due process. Id. at 20-23.

### 2. *The Plaintiff's Response (Dkt. No. 10)*

The plaintiff argues that strict scrutiny, not rational basis, is the correct standard of review for his substantive due process claim, because the statute interferes with a fundamental right. Dkt. No. 10 at 5. He asserts that the statute implicates his Fourth Amendment rights, because it requires him to wear a GPS monitor for life. Id. The plaintiff also argues that whether the standard of review is strict scrutiny or rational basis, the statute violates substantive due process because the inclusion of individuals convicted of false imprisonment of a minor is not rationally related to the purpose of the sex offender registration statute, which the plaintiff describes as protecting the public from individuals who have committed sex offenses. Id. at 6-9. The plaintiff argues that in determining whether the inclusion of those convicted of falsely imprisoning minors is rationally related to the purpose of the statute, the court should consider the costs imposed by the statute—stigmatizing

6

individuals who have not committed sex offenses and undermining the accuracy and effectiveness of the sex offender registry. Id. at 9-11. The plaintiff asserts that none of the reasons the defendant gives in support of a rational basis for the statute are valid. Id. at 11-18.

As for his procedural due process claim, the plaintiff asserts that the defendant did not address his "stigma-plus" theory. Id.at 19. Citing Paul v. Davis, 424 U.S. 693 (1976), the plaintiff argues that his inclusion in the requirement to register as a sex offender meets the "stigma-plus" elements because the requirement injures the plaintiff's reputation and alters his legal rights and status. Id. at 20-21. The plaintiff disputes the defendant's assertion that Conn. Dep't of Pub. Safety v. Doe, 538 U.S. 1 (2003) forecloses his claim. Id. at 22-24. He asserts that the Seventh Circuit has validated the "stigma-plus" procedural due process claim. Id. at 24-25. He asserts that the process afforded him at his criminal proceedings was not adequate. Id. at 25-28. And he asserts that there are factual issues which must be resolved before the court can determine whether he has stated a claim. Id. at 28-29.

3.    *The Defendant's Reply (Dkt. No. 11)*

The defendant replies that the substantive due process issue is not whether the statute is unfair as applied to some people, but whether it bears a rational relationship to a legitimate goal. Dkt. No. 11 at 1-2. The defendant argues that the statute bears a rational relationship to the correlation between non-sexual false imprisonment and future sex offenses, the difficulty in proving that people who falsely imprison minors have sexual motives and the risk of

7

sexually-motivated violence that exists when a minor victim is placed in a vulnerable situation. Id. at 2. The defendant argues that the complaint did not allege that the statute violates the plaintiff's Fourth Amendment rights and that the Seventh Circuit has found to the contrary. Id. at 2. Reiterating that rational basis is the proper standard of review, the defendant asserts that fact-finding is inappropriate. Id. at 3. And she reiterates that Supreme Court precedent forecloses the plaintiff's procedural due process challenge. Id.

    C.    <u>Analysis</u>

        1.    *Jurisdiction*

The court has federal question jurisdiction under 28 U.S.C. §1331 because the plaintiff has sued under a federal statute, 42 U.S.C. §1983.

        2.    *Standard for Motion to Dismiss*

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); <u>Hosea v. Slaughter</u>, 669 Fed. App'x 791, 792 (2016); <u>Gibson v. City of Chi.</u>, 910 F.2d 1510, 1520 (7th Cir. 1990). "[A] judge reviewing a motion to dismiss under Rule 12(b)(6) cannot engage in fact-finding." <u>In re Consol. Indus.</u>, 360 F.3d 712, 717 (7th Cir. 2004) (citing <u>Int'l Marketing, Ltd. v. Archer-Daniels-Midland Co.</u>, 192 F.3d 724, 730 (7th Cir. 1999)). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." <u>Alarm Detection Systems, Inc. v. Vill. of Schaumburg</u>, 930 F.3d 812, 821 (7th Cir. 2019) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when

8

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

When evaluating a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the plaintiff, accepts all well-pleaded facts as true and draws reasonable inferences in the plaintiff's favor. Taha v. Int'l Bhd. of Teamsters, Local 781, 947 F.3d 464, 469 (7th Cir. 2020) (citing Yeftich v. Navistar, Inc., 722 F.3d 911, 915 (7th Cir. 2013)). "[L]egal conclusions and conclusory allegations merely reciting the elements of a claim," however, "are not entitled to this presumption of truth." McCauley v. City of Chi., 671 F.3d 611, 616 (7th Cir. 2011) (citing Iqbal, 556 U.S. at 678).

### 3. Application of the Law to the Facts

#### a. Claim One: Substantive Due Process

"To allege a viable substantive due process claim, [a plaintiff] would need to allege conduct under color of state law that 'violated a fundamental right or liberty' and was so 'arbitrary and irrational' as to 'shock the conscience.'" Nelson v. City of Chi., 992 F.3d 599, 604 (7th Cir. 2021) (quoting Campos v. Cook Cty., 932 F.3d 972, 975 (7th Cir. 2019); GEFT Outdoors, LLC v. City of Westfield, 922 F.3d 357, 368 (7th Cir. 2019)). The Fourteenth Amendment's substantive due process component "protects 'only those fundamental rights and liberties which are, objectively, "deeply rooted in this Nation's history and tradition,"' and must be subject to 'careful description.'" Id. (quoting Washington v. Glucksberg, 521 U.S. 702, 720-21 (1997)). The doctrine

9

"provides heightened protection against government interference with" those fundamental rights and liberties. Sung Park v. Ind. Univ. Sch. of Dentistry, 692 F.3d 828, 832 (7th Cir. 2012) (quoting Glucksberg, 521 U.S. at 720). The liberty interests protected by substantive due process are few; they "includ[e] things like the right to marry, the right to have children, the right to marital privacy, the right to contraception, and the right to bodily integrity." Id. at 832. The list also includes the right to direct the education and upbringing of one's children and the right to abortion. Glucksberg, 521 U.S. at 720 (citations omitted). Substantive due process also protects against government interference in most of "the specific freedoms protected by the Bill of Rights." Id.; Obergefell v. Hodges, 576 U.S. 644, 663 (2015) (citing Duncan v. Louisiana, 391 U.S. 145, 147-49 (1968)). But the Supreme Court has been "'reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.'" Id. (quoting Collins v. City of Harker Heights, Tex., 503 U.S. 115, 125 (1992)).

The parties dispute whether the court should analyze the plaintiff's substantive due process claim under the strict scrutiny or rational basis standard. When government action interferes with fundamental rights or liberties, it is subject to "more demanding scrutiny"—strict scrutiny. St. John's United Church of Christ v. City of Chi., 502 U.S. 616, 637 (7th Cir. 2007) (citing Krislov v. Rednour, 226 F.3d 851, 863 (7th Cir. 2000)). Under strict scrutiny, a law passes constitutional muster only if it is narrowly tailored to

serve a compelling state interest. <u>Glucksberg</u>, 521 U.S. at 721. When the government action does not interfere with fundamental rights or liberties, "substantive due process requires only that the practice be rationally related to a legitimate government interest, or alternatively phrased, that the practice be neither arbitrary nor irrational." <u>Lee v. City of Chi.</u>, 330 F.3d 456, 467 (7th Cir. 2003) (citing <u>Glucksberg</u>, 521 U.S. at 728).

The plaintiff alleged in the complaint that "[a] statute violates the Due Process Clause of the Fourteenth Amendment on its face and as applied if it bears no rational relationship to a legitimate government purpose." Dkt. No. 1 at ¶18. He further alleged that his registration as a sex offender "bears no rational relationship to the legislative purpose of protecting the public from those who have committed sexually-based offenses." <u>Id.</u> at ¶20. At the time he filed the complaint, then, the plaintiff anticipated that his substantive due process claim would be subjected to rational basis review.

In his brief in opposition to the motion to dismiss, however, the plaintiff argued that "strict scrutiny applies because the Statute interferes with a fundamental right." Dkt. No. 10 at 5. The plaintiff argued that Wis. Stat. §301.48(2)(a)(7)'s requirement that he wear a GPS monitor for the rest of his life "implicates" a fundamental right—one of his Fourth Amendment rights. <u>Id.</u>

In reply, the defendant pointed out that the complaint did not plead that the statute violates—or implicates—the plaintiff's Fourth Amendment rights. Dkt. No. 11 at 2. This is true. While the complaint mentions the GPS requirement and the burdens it imposes, it does not allege that the statute

11

violates substantive due process because it impinges on the plaintiff's Fourth Amendment rights. As the court has noted, the complaint assumed that the statute did not impinge on any fundamental right, because it assumed that the rational basis standard of review applied.

But "[f]ederal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." Johnson v. City of Shelby, Miss., 574 U.S. 10, 11 (2014) (citations omitted). If a plaintiff adequately informs the defendant of the factual basis for the complaint, he is "required to do no more to stave off threshold dismissal for want of an adequate statement of [his] claim." Id. And even if the plaintiff had been required to plead his legal theory so precisely, the court has the authority to give him the opportunity to remedy his error by amending his claim.

The defendant next argued that in Belleau v. Wall, 811 F.3d 929 (7th Cir. 2016), the Seventh Circuit had resolved the question of whether subjecting a person to a lifetime of GPS monitoring violated the person's Fourth Amendment rights, concluding that it did not. Dkt. No. 11 at 2. Belleau involved a plaintiff who had been convicted of sexually assaulting a child, had finished serving his term of incarceration and was subject to lifetime GPS monitoring under a Wisconsin statute that required such monitoring for any sex offender released from civil commitment for sexual offenses. Belleau, 811 F.3d at 931. Belleau argued that the visibility of the GPS anklet to others invaded his privacy in violation of the Fourth Amendment, by causing those who saw it to assume that he was a criminal. Id. at 932. The Seventh Circuit pointed out that the

12

Fourth Amendment does not create a right to privacy, and that the Supreme Court's decision in Grady v. North Carolina, 575 U.S. 306 (2015) had "indicate[d] that electronic monitoring of sex offenders is permitted if reasonable." Id. The court concluded that the requirement was reasonable as to Belleau, given Belleau's convictions for sexual molestation of prepubescent children. Id. at 932-37. It found that wearing the ankle monitor involved a "slight" "incremental loss of privacy" compared to the value to society of collecting location information on sex offenders, leading to the conclusion that the GPS monitoring law at issue was reasonable and did not violate the Fourth Amendment. Id.

   At oral argument on the motion to dismiss this case, the plaintiff attempted to distinguish Belleau, arguing that it involved a different statute than the one that mandates his GPS monitoring. Belleau was subject to monitoring under Wis. Stat. §301.48, which requires lifetime GPS tracking of people on various forms of supervision after being convicted of a "serious child sex offense" (as defined by the statute). The plaintiff in the instant case emphasized that he has not been convicted of *any* child sex offense, much less a serious one. He asserted that to invoke strict scrutiny, he needed to show only that the lifetime GPS requirement to which he is subject *implicates* the Fourth Amendment, and he pointed to Grady, 575 U.S 306 in support of his argument that it does. In Grady, the Supreme Court held that "a State . . . conducts a search when it attaches a device to a person's body, without consent, for the purpose of tracking that individual's movements." Id. at 309.

13

The court agrees that under <u>Grady</u>, the requirement of lifetime GPS monitoring appears to implicate the plaintiff's Fourth Amendment rights. That conclusion begs a question that neither party addressed directly in their briefs or at oral argument[1]—if the Fourth Amendment protects a person from unreasonably being subjected to the state attaching to him without his consent a device that tracks his location, why did the plaintiff bring that part of his claim under the substantive due process clause of the Fourteenth Amendment, rather than under the Fourth Amendment? In <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989), the Supreme Court held that all excessive force claims arising out of conduct during an arrest, an investigatory stop or a "seizure" of a person "should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." The Court explained that "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." <u>Id.</u>

Five years later, the Court reiterated this holding in the context of a plaintiff who had sued the police officer who arrested him (when the plaintiff surrendered after learning of a warrant for his arrest) and testified at the plaintiff's preliminary hearing in a prosecution which was dismissed because

---

[1] The defendant implied the question in her oral argument, asserting that under the plaintiff's argument, every case involving a Fourth Amendment violation would constitute a substantive due process violation subject to strict scrutiny.

14

the charge did not state an offense. In <u>Albright v. Oliver</u>, 510 U.S. 266, 271 (1994), the plaintiff sued under 42 U.S.C. §1983, asserting that the officer violated his substantive due process right "to be free of prosecution without probable cause." The plaintiff did not sue under the Fourth Amendment, even though, as the Court noted, "his surrender to the State's show of authority constituted a seizure for purposes of the Fourth Amendment." <u>Id.</u> (citing <u>Terry v. Ohio</u>, 392 U.S. 1, 19 (1968); <u>Brower v. Cty. of Inyo</u>, 489 U.S. 593, 596 (1989)).

The <u>Albright</u> Court began by noting the Supreme Court's general reluctance to expand the concept of substantive due process. <u>Id.</u> at 271-72. Recounting a century of decisions declaring the procedural protections in the Bill of Rights applicable to the states through the Fourteenth Amendment, the Court next observed that those decisions had "substituted, in these areas of criminal procedure, the specific guarantees of the various provisions of the Bill of Rights embodied in the first 10 Amendments to the Constitution for the more generalized language contained in the earlier cases construing the Fourteenth Amendment." <u>Id.</u> at 273. The Court then explained that

> [i]t was through these provisions of the Bill of Rights that their Framers sought to restrict the exercise of arbitrary authority by the Government in particular situations. Where a particular Amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham v. Connor*, . . . 490 U.S., at 395 . . . .
>
> We think this principle is likewise applicable here. The Framers considered the matter of pretrial deprivations of liberty and drafted

15

the Fourth Amendment to address it. The Fourth Amendment provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

We have in the past noted the Fourth Amendment's relevance to the deprivations of liberty that go hand in hand with criminal prosecutions. See *Gerstein v. Pugh*, 420 U.S. 103, 114 . . . (1975) (holding that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to any extended restraint on liberty following an arrest). We have said that the accused is not "entitled to judicial oversight or review of the decision to prosecute." *Id.*, at 118-119 . . . . See also, *Beck v. Washington*, 369 U.S. 541, 545 . . . (1962); *Lem Woon v. Oregon*, 229 U.S. 586 . . . (1913). But here petitioner was not merely charged; he submitted himself to arrest.

We express no view as to whether petitioner's claim would succeed under the Fourth Amendment, since he has not presented that question in his petition for certiorari. We do hold that substantive due process, with its "scarce and open-ended" "guideposts," *Collins v. Harker Heights*, 503 U.S. [115], at 125 . . . [(1992)] can afford him no relief.

Id. at 273-75.

The Court since has clarified that its holding in Graham does not mean

that

> all constitutional claims relating to physically abusive government conduct must arise under either the Fourth or Eighth Amendments; rather *Graham* simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.

United States v. Lanier, 520 U.S. 259, 272 n.7 (1997).

16

Given Graham and Albright, the Fourth Amendment, not substantive due process, is the proper home for the plaintiff's claim regarding Wis. Stat. §301.48(2)(a)(7) requirement that he be subjected to lifetime GPS monitoring. The court has noted that in Grady, the Supreme Court held that subjecting a person to GPS monitoring constitutes a search. But the Grady Court went on to explain that the fact that subjecting someone to GPS monitoring constitutes a search does not end the inquiry, because "[t]he Fourth Amendment prohibits only *unreasonable* searches." Grady, 575 U.S. at 310. The Court explained that "[t]he reasonableness of the search depends on the totality of the circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations." Id. (citations omitted). The plaintiff's claim, though couched in substantive due process, boils down to a claim that the statute subjects him to an unreasonable search. The court will give the plaintiff an opportunity to amend his complaint to articulate that portion of his claim under the Fourth Amendment.

There was more to the plaintiff's substantive due process claim, however, than his challenge to the lifetime GPS requirement. He has challenged the requirement that he register as a sex offender and the requirement that the defendant notify the police chief or sheriff of any community in which he resides of this fact. Dkt. No. 1 at ¶12. He has challenged the requirement that he be subject to special conditions of extended supervision, such as the condition that he have no contact with minors and the condition that he stay

17

away from locations such as schools. Id. The plaintiff has not argued that these restrictions implicate his Fourth Amendment rights and the court cannot perceive any Fourth Amendment implications related to those requirements. Nor has the plaintiff identified any other fundamental liberty or right impacted by those restrictions. They do not impact his right to marry or have children or guide his children's upbringing or protect his marital privacy. He has not identified any of the specific freedoms protected by the Bill of Rights that would be impacted by the restrictions. Because the plaintiff has not identified a fundamental right or liberty impacted by those restrictions, the rational basis standard of review applies.

In response to the motion to dismiss, the plaintiff argued that even under the rational basis standard of review, the statute is constitutionally flawed because treating non-sexual false imprisonment of a minor as a sex offense bears no rational relationship to the purpose of the sex offender registry. Dkt. No. 10 at 6. The plaintiff asserted that the purpose of the sex offender registry is to protect the public from people who have committed sex offenses. Id. He implied, without saying so directly, that State v. Smith, 323 Wis. 2d 377 (Wis. 2010), the case in which the Wisconsin Supreme Court upheld the constitutionality of the statute as applied to individuals convicted of false imprisonment, was wrongly decided. Id. at 7-8. The plaintiff argued that the defendant has not provided "any explanation as to how registering individuals whose crimes are of a non-sexual nature serves the purpose of protecting the public, and especially children, against sexual crimes." Id. at 8-9.

18

The plaintiff also argued that the court should factor into its rational basis analysis the costs—to those subject to the statute and to society—that the statute imposes. Id. at 9. He identified two such costs—the stigma to an individual not convicted of a sex offense that results from being labeled a "sex offender," id. at 9, and the fact that inclusion of non-sex offenders in the registry undermines the effectiveness and accuracy of the registry, id. at 10.

The plaintiff rejected the governmental interests that the defendant has identified as rational. First, he attacked the defendant's argument that it was rational for the legislature to include non-parents convicted of false imprisonment of a minor in the statute's coverage because determining whether a particular perpetrator had a sexual motive for the false imprisonment would be unworkable. Id. at 11. The plaintiff pointed out that Wisconsin has laws that authorize judges to decide whether a crime has a sexual motive—Wis. Stat. §973.048(2m), which requires a court sentencing someone for certain types of offenses involving minors to require the defendant to comply with the sex offender registration statute "unless the court determines, after a hearing on a motion made by the person, that the person is not required to comply . . . ", and Wis. Stat. §980, which allows a court to civilly commit someone convicted of a crime that is not inherently sexual in nature if the court determines, under specified procedures, that that crime was sexually motivated. Id. at 12. The plaintiff asserted that these laws—and laws from other states—demonstrate that courts are capable of determining whether an inherently non-sexual crime is sexually motivated. Id. at 12-15. And, the

19

plaintiff argued, such a determination would have been very easy for a court to make under the facts in his case. Id. at 13.

The plaintiff also rejected the defendant's argument that the legislature rationally could have concluded "that a high percentage of non-parental false imprisonment crimes are committed for some sexual purpose." Id. at 14. He argued that the defendant has provided no evidence in support of this theoretical assertion and asserted that he should have the opportunity to show that there is none. Id. He claimed that "it's irrational to impose a category-based statutory classification when the overwhelming number of people included in a class are not a cause of the harm the Statute seeks to relieve." Id. at 15.

Finally, the plaintiff rejected what he perceived to be the defendant's argument that federal funding was dependent on the state expanding the statute to include false imprisonment because the Jacob Wetterling Act included it. Id. He pointed to Florida, a state that he said complies with SORNA (the Jacob Wetterling Act is now called the "Sex Offender Registration and Notification Act") but does not include "false imprisonment" as a sex offense. Id. at 16. And, he said, the fact that the federal law defines false imprisonment as a sex offense does not make the Wisconsin statute constitutional; the federal statute also might be unconstitutional. Id. at 17. He pointed to state courts that have found similar laws unconstitutional as applied to individuals whose offenses did not contain a sexual component. Id. at 17-18.

20

"Rational-basis review is 'highly deferential.'" Brown v. City of Michigan City, Ind., 462 F.3d 720, 733 (7th Cir. 2006) (quoting Turner v. Glickman, 207 F.3d 419, 426 (7th Cir. 2000)). "To find that a government action violates the requirements of substantive due process in this context, it must be 'utterly lacking in rational justification.'" Id. Under rational basis review, "substantive due process requires only that the statutory imposition not be completely arbitrary and lacking any rational connection to a legitimate government interest." Turner, 207 F.3d at 426 "Under rational basis review, a state law is constitutional even if it is 'unwise, improvident, or out of harmony with a particular school of thought.'" Goodpastor v. City of Indianapolis, 736 F.3d 1060, 1071 (7th Cir. 2013) (quoting Eby-Brown Co., LLC v. Wis. Dep't of Agric., 295 F.3d 749, 754 (7th Cir. 2002)). "[B]ecause [the Supreme Court] never require[s] a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged action actually motivated the legislature." FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 315 (1993) (citations omitted).

"Those attacking a statute on rational basis grounds have the burden to negate 'every conceivable basis which might support it.'" Id. As the Seventh Circuit has noted, this is a "heavy burden": "[s]o long as there is any conceivable state of facts that supports the [challenged] policy, it passes muster under the due process clause; put another way, only if the policy is patently arbitrary would if fail." Hayden ex rel. A.H. v. Greensburg Cmty. Sch. Corp., 743 F.3d 569, 576 (7th Cir. 2014) (citations omitted). "[G]overnmental

21

action passes the rational basis test if a sound reason may be hypothesized."

Greater Chi. Combine and Ctr., Inc. v. City of Chi., 431 F.3d 1065, 1071 (7th Cir. 2005) (quoting Pro-Eco, Inc. v. Bd. of Comm'rs of Jay Cty., 57 F3d 505, 514 (7th Cir. 1995)).

> [O]n rational-basis review, "[the state] does not need to present actual evidence to support its proffered rationale for the law, which can be 'based on rational speculation unsupported by evidence or empirical data.'" *Monarch* [*Beverage Co. v. Cook*], 861 F.3d [678] at 683 [(7th Cir. 2017)] (quoting *Beach Commc'ns*, 508 U.S. at 315 . . . Put differently, "a legislative choice is not subject to courtroom fact-finding." *Beach Commc'ns*, 508 U.S. at 315 . . .; *see also Nat'l Paint* [*& Coatings Ass'n* [*v. City of Chi.*], 45 F.3d [1124,] at 1127 [(7th Cir. 1995)].

Minerva Dairy, Inc. v. Harsdorf, 905 F.3d 1047, 1055 (7th Cir. 2018). The legislative choice "may be based on rational speculation unsupported by evidence or empirical data." Beach Commc'ns, 508 U.S. at 315.

The plaintiff cannot meet his heavy burden under rational basis review. Twelve years ago, the Wisconsin Supreme Court was faced with the same argument the plaintiff makes to this court. In Smith, the petitioner argued that registration requirement of Wisconsin's statutory sex offender scheme, Wis. Stat. §301.45, was unconstitutional "as applied to him because it require[d] him to register as a sex offender even though his underlying conviction for false imprisonment of a minor was not sexual in nature." Smith, 323 Wis. 2d at 387. In concluding that the petitioner had not stated a substantive due process claim, the Smith court observed that the Wisconsin legislature could have required that the false imprisonment of a minor be sexual in nature to come within the ambit of the registration requirement, as a few other states had

22

done, but that it did not do so. Id. at 394. The court observed that, conversely, the legislature had given courts discretion to order that defendants convicted of offenses not specifically listed in the registration statute be required to register if the court determined that the underlying conduct was sexually motivated. Id. at 395. These facts led the Smith court to conclude that "[t]he legislature was well aware of its ability to carve out exceptions to the registration requirements," and yet it did not do so for defendants who committed the crime of falsely imprisoning a minor, even if the offense had no sexual component. Id. at 396.

The Smith court then hypothesized several rationales for the legislature's inclusion of any false imprisonment of a minor offense. First, it noted that "[l]egislatures around the country have acknowledged a nexus between child abductions and sexual offenses, and a majority of states have enacted similar legislation." Id. at 401. Second, the court observed that the "legislature could have rationally decided that, on balance, it is important to warn the public and law enforcement about those criminals . . . who falsely imprison a minor, regardless of whether the State can prove a sexual component." Id. at 403. (The court earlier had concluded that the label of the petitioner's crime and the name of the registry did not change the fact that the statute included false imprisonment of a minor as a crime that required registration. Id. at 399.) The court opined that the legislature could have believed that requiring a "second layer of proof regarding the sexual nature of the crime would prove unworkable and inconsistent." Id. at 403.

23

The legislature may have considered those instances where intervening circumstances prevent an abductor from committing a sexual offense. Perhaps with this consideration in mind, the protection of society and children was properly elevated so as to include Smith in the registry regardless of whether there is proof that the crime he committed was sexual. Is a person who falsely imprisons a minor with the purpose to commit a sexual assault less dangerous to the public if the assault is thwarted, the child cannot be found, or the child cannot communicate about the crime? An abductor's intentions or actions cannot always be proven or alleged, particularly when a child is missing or the body is decomposed. The protection of the public and children is furthered by the fact that the statute does not require that the State prove what the abductor must have been thinking or whether the abductor committed a sexual act. The legislature chose to protect the public and assist law enforcement by requiring certain offenders, like Smith, to register regardless of whether proof exists as to the crime's sexual underpinnings.

Id. at 403-04.

The court also considered that the legislature might have thought that a person who would confine or restrain a child without the child's consent "is a greater threat to public safety than a person in a factually consensual sexual relationship with a child." Id. at 406 (quoting State v. Joseph E.G., 240 Wis. 2d 481, 490 (Ct. App. 2000)). It asserted that "[t]he particularly high rates of recidivism for both successful and unsuccessful sexually motivated offenders are rational concerns for legislative action." Id. at 407.

This court is not bound by the Smith decision, but the decision demonstrates that there are several conceivable rationales that might have supported the legislature's decision.

The plaintiff has argued that there is no rational basis for subjecting a non-parent convicted of falsely imprisoning a minor to the same statutory limitations to which sex offenders are subject, because doing so does not

24

protect children and the public from sex offenders. But that isn't the question. The question is not whether the statute furthered the government purpose of protecting children and the public from sex offenders, but whether the legislature had *any* rational justification for subjecting a non-parent convicted of falsely imprisoning a minor to the same statutory limitations it previously had imposed on sex offenders. Perhaps the plaintiff is right that subjecting him to the same limitations imposed on sex offenders does not protect children or the public from *sex offenders*. That does not mean that it does not protect children and the public from *anything*.

When the legislature expanded the registry legislation through Act 440, it did not include every crime that involved a minor. It did not require someone who steals from a person under the age of eighteen to comply with the registration and reporting requirements, or a non-parent who commits a battery against a person under the age of eighteen. It included only non-parents who imprison a child against the child's will or who take a child against the child's will. Requiring persons who imprison or abduct children who are not theirs to submit to certain registration and reporting requirements could easily reflect a concern on the part of the legislature that those persons pose a particular risk to children (and to their parents), even if that risk is not sexual. It is not difficult to imagine the legislature concluding that such persons should be required to register with the state.[2] It is not difficult to

---

[2] As the defendant points out, if the legislature did conclude that non-parents who imprison or abduct minors against their will should be subject to

imagine the legislature concluding that if such a person is convicted of such an offense on two or more occasions, he or she should be subject to monitoring and community notification, should be prohibited from contact with minors and should be kept at a distance from places like schools.

The plaintiff cites no authority for his argument that the court should consider the costs of subjecting non-parents convicted of falsely imprisoning minors to the statutory limitations imposed on sex offenders. Rational basis review is not a balancing test. It asks only whether the legislation is blatantly arbitrary and lacking any rational relation to a legitimate government interest. It does not authorize the court to strike down legislation that has a conceivable rational basis but that exacts particular costs.

The plaintiff disagrees with the Wisconsin Supreme Court and with the defendant that it would have been unworkable for the legislature to add a requirement that the false imprisonment have some sexual motivation, pointing out that other statutes require courts to determine whether a non-sexual crime was sexually motivated. The legislature likely could have added a requirement of sexual motivation; the Smith court observed that it knew how to do so if it had wanted to. The fact that the legislature knew how to impose a sexual motivation requirement may imply that its choice not to do so was not a result

_____

registration and reporting requirements, it could have created a separate statutory registration and reporting scheme for those offenders. The fact that it did not do so, and instead used an existing statutory registration and reporting scheme that bears a stigmatizing label, does not demonstrate that the choice to use the existing statutory scheme had no rational basis.

26

of its doubt that such a requirement would be workable. But that does not demonstrate that the statute has no rational relationship to any legitimate government interest.

The plaintiff asserts that the defendant has no evidence to support its argument that a high percentage of non-parental false imprisonment crimes have a sexual purpose. But the state is not required to present such evidence; it is not required to present any evidence at all. It is the *plaintiff's* heavy burden to negate any conceivable rational justification for the legislation. The plaintiff has not done so.

The plaintiff repeatedly has asserted that he never has committed a sex offense, yet the law has labeled him a sex offender. Although this labeling is not the only harm the plaintiff protests, it is a significant part of that harm. The complaint indicates that the plaintiff seeks relief from the label. Dkt. No. 1 at ¶2. It emphasizes how he has reformed his life since being released from custody. Id. at ¶¶13-15. As the Smith court stated, these arguments "essentially boil[] down to the fact that the title of the registry and the statute's language unfairly characterize [the plaintiff] as a 'sex offender' because the crime he committed was not sexual." Smith, 323 Wis. 2d at 398. The court understands the plaintiff's frustration with the stigma such a label creates. But that is not a *substantive* due process argument. The court will discuss below the plaintiff's "stigma-plus" argument, but suffice to say that the "stigma-plus test is used to determine whether state action violates an individual's *procedural* due process rights." Doe v. Mich. Dept. of State Police, 490 F.3d

27

491, 502 (6th Cir. 2007) (citing <u>Paul v. Davis</u>, 424 U.S. 693, 701 n.5 (1976)) (emphasis added). It is not a substantive due process argument.

The court will dismiss the plaintiff's substantive due process claim, because he has not met his burden of demonstrating that the legislation of which he complains has no rational basis.

    b.  Claim 2: Procedural Due Process

The plaintiff has asserted that labeling him a "'sex offender' on a public registry is false and defamatory." Dkt. No. 1 at ¶23. He says that the statute's registration requirements and restrictions impair his interests and alter his legal status. <u>Id.</u> at ¶24. He claims that the statute infringed his liberty interests "without providing him any opportunity to challenge [the sex offender] designation in an adversarial proceeding," and thus that it violates his procedural due process rights under the Fourteenth Amendment. <u>Id.</u> at ¶25.

A procedural due process claim has two elements: "(1) deprivation of a protected interest and (2) insufficient procedural protections surrounding that deprivation." <u>Tucker v. City of Chi.</u>, 907 F.3d 487, 491 (7th Cir. 2018) (quoting <u>Michalowicz v. Vill. Of Bedford Park</u>, 528 F.3d 530, 534 (7th Cir. 2008)) (internal quotation marks omitted). The defendant argues that the plaintiff cannot prove the second element because he received the process he was due in his initial criminal proceedings. Dkt. No. 9 at 20. The defendant asserts that the United States Supreme Court effectively decided this issue in <u>Conn. Dep't of Pub. Safety</u>, 538 U.S. 1. <u>Id.</u>

The plaintiff responded that he was asserting a "stigma-plus" theory. Dkt. No. 10 at 9 (citing dkt. no. 1 at ¶22). A plaintiff states a stigma-plus claim when he alleges that "[1] a state actor sullies 'a person's good name, reputation, honor, or integrity; [2] without first giving that person 'notice and an opportunity to be heard.'" Cossio v. Blanchard, 836 Fed. App'x 434, 437 (7th Cir. 2020). The plaintiff must show that the state actor stigmatized the plaintiff and that the stigma altered his legal status without due process. Id.

i.      Stigma

The plaintiff has stated sufficient facts to show that his reputation has been harmed and that his legal status has been altered. The Seventh Circuit has recognized that "any kind of placement on the sex offender registry is stigmatizing." Schepers v. Comm'r, Ind. Dep't Corr., 691 F.3d 909, 914 (7th Cir. 2012). The Schepers court concluded that reporting requirements, travel limitations requiring the defendant to report to police in the home and destination jurisdictions and prohibitions on living within 1,000 feet of a school or park "fit the requirement in *Paul v. Davis*[, 424 U.S. 693 (1976)] of an alteration in legal status that takes the form of a deprivation of rights under state law." Id. The registration and reporting requirements of which the plaintiff complains are similar to those in Schepers: annual registration (Wis. Stat. §301.45), GPS tracking (Wis. Stat. §301.48) and notice to those in the community of the party's characterization as a sex offender (Wis. Stat. 301.46(2m)), none of which are applicable to a citizen not required to register

29

as a sex offender. The defendant—the state actor—is responsible for that stigma and for the alteration of the plaintiff's legal status.

### ii. Process

The defendant asserts, however, that <u>Conn. Dep't of Pub. Safety</u> forecloses the plaintiff's claim that he was deprived of due process. Dkt. No. 9 at 20. In <u>Conn. Dep't of Pub. Safety</u>,

> [t]he Court of Appeals concluded that [public] disclosure [of Connecticut's sex offender registry] both deprived registered sex offenders of a "liberty interest," and violated the Due Process Clause because officials did not afford registrants a predeprivation hearing to determine whether they are likely to be "currently dangerous." *Doe v. Department of Public Safety ex rel. Lee*, 271 F.3d 38, 44, 46 (2001) (Internal quotation marks omitted). Connecticut, however, has decided that the registry requirement shall be based on the fact of previous conviction, not the fact of current dangerousness. Indeed, the public registry explicitly states that officials have not determined that any registrant is currently dangerous.

<u>Conn. Dep't of Pub. Safety</u>, 538 U.S. at 4.

The <u>Conn. Dep't of Pub. Safety</u> Court explained that under "Megan's Law," any person convicted of "criminal offenses against a minor, violent and nonviolent sexual offenses, and felonies committed for a sexual purpose" must register with the Connecticut Department of Public Safety after being released into the community. <u>Id.</u> "The registration requirement runs for 10 years in most cases; those convicted of sexually violent offenses must register for life." <u>Id.</u> at 4-5. The state web site allowed members of the public to obtain the names, addresses and other identifying information of registered sex offenders. <u>Id.</u> at 5.

30

The respondent argued that he was not a "dangerous sexual offender" and that the law deprived him of his liberty interest in his reputation and altered his status without a meaningful opportunity to be heard. Id. at 6. The appellate court held that the Due Process Clause "entitle[d] class members to a hearing 'to determine whether or not they are particularly likely to be currently dangerous before being labeled as such by their inclusion in a publicly disseminated registry.'" Id.

The Supreme Court disagreed, reasoning that

> the fact that respondent seeks to prove—that he is not currently dangerous—is of no consequence under Connecticut's Megan's Law. As the [Department of Public Safety] Website explains, the law's requirements turn on an offender's conviction alone—a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest. [Lower court citation omitted] ("'Individuals included within the registry are included *solely* by virtue of their conviction record and state law'" (emphasis added)). No other fact is relevant to the disclosure of registrants' information. Conn. Gen. Stat. §§ 54-257, 54-258 (2001). Indeed, the disclaimer on the Website explicitly states that respondent's alleged nondangerousness simply does not matter. [Lower court citation omitted] ("'[DPS] has made no determination that any individual included in the registry is currently dangerous'").

> In short, even if respondent could prove that he is not likely to be currently dangerous, Connecticut has decided that the registry information of *all* sex offenders—currently dangerous or not—must be publicly disclosed. Unless respondent can show that that *substantive* rule of law is defective (by conflicting with a provision of the Constitution), any hearing on current dangerousness is a bootless exercise.

Id. at 7 (emphasis in the original).

Conn. Dep't of Pub. Safety requires this court to consider whether the fact that the plaintiff's convictions for false imprisonment of a minor did not

involve sexual conduct is of "consequence" under the statute that subjects him to the registration, reporting, monitoring and other requirements.

The plaintiff was convicted of two counts of false imprisonment in violation of Wis. Stat. §940.30, which states that "[w]hoever intentionally confines or restrains another without the person's consent and with knowledge that he or she has no lawful authority to do so is guilty of a Class H felony." Wis. Stat. §301.45—the sex offender registry statute—imposes reporting requirements on anyone who is convicted of a "sex offense." Section (1d)(b) includes in the definition of "sex offense" a violation of §940.30 "if the victim was a minor and the person who committed the violation was not the victim's parent." Under Wis. Stat. §301.46(2m)(am)1.1, the defendant's agency must notify the authorities—the police chief or sheriff—in the community where he or she is residing of the release from custody of any person who has been convicted "on 2 or more separate occasions" of a sex offense. Finally, Wis. Stat. §301.48(2)(a)(7) subjects to lifetime GPS tracking any person for whom a police chief or sheriff receives notice under Wis. Stat. §301.46(2m)(am).

As was the case with the statute in Conn. Dep't of Pub. Safety, the fact the plaintiff asserts—that his offenses of conviction were not sexually motivated and had no sexual component—is of "no consequence" under the Wisconsin sex offender registry statute. The statute's registration, reporting and other requirements apply to any person convicted of violating Wis. Stat. §940.30 (false imprisonment) when the victim of the false imprisonment was a minor and the defendant was not the minor's parent. The relevant facts are whether

32

the person was convicted of violating §940.30, whether the victim was a minor and whether the person who committed the violation was the minor's parent. Even if the plaintiff could prove the fact he has asserted over and over—that there was no sexual component to his false imprisonment convictions—Wisconsin's legislature has decided that he would nonetheless be subject to the requirements of the sex offender registration and reporting statute.

The plaintiff has attempted to distinguish facts that gave rise to his convictions from those in Conn. Dep't of Pub. Safety. He begins by arguing that because the state did not allege or prove that he had any sexual intent or motivation, he "did not have a meaningful opportunity to contest whether his offense was sexual at his criminal trial."[3] Dkt. No. 10 at 22. The state was not required to prove sexual intent or sexual motive to convict the plaintiff of the crime of false imprisonment. Wis. JI—Criminal 1275 (2014) provides:

### Statutory Definition of the Crime

False imprisonment, as defined in § 940.30 of the Criminal Code of Wisconsin, is committed by one who intentionally confines or restrains another without the person's consent and with knowledge that (he) (she) has no lawful authority to do so.

### State's Burden of Proof

Before you may find the defendant guilty of this offense, the State must prove by evidence which satisfies you beyond a reasonable doubt that the following five elements were present.

### Elements of the Crime That the State Must Prove

1. The defendant confined or restrained (name of victim).

---

[3] The defendant pled guilty; he did not have a trial.

2. The defendant confined or restrained (name of victim) intentionally. This requires that the defendant had the mental purpose to confine or restrain (name of victim).

3. (Name of victim) was confined or restrained without (his) (her) consent.

4. The defendant had no lawful authority to confine or restrain (name of victim).

5. The defendant knew that (name of victim) did not consent and knew that (he) (she) did not have lawful authority to confine or restrain (name of victim).

See also, State v. Long, 317 Wis. 2d 92, 106 (Wis. 2009) (to prove false imprisonment under Wisconsin law, the state must prove five elements: "(1) the defendant confined or restrained [the victim]; (2) he did so intentionally; (3) he did so without [the victim's] consent; (4) the defendant had no lawful authority to restrain [the victim]; and (5) he knew that [the victim] did not consent and that he did not have lawful authority to restrain [the victim]").

Nor was the state required to prove sexual motive or sexual intent to prove that the plaintiff was subject to the registration and reporting requirements of Wis. Stat. §301.45; it needed to prove only that the victim of the plaintiff's false imprisonment was a minor and that the plaintiff was not the parent of that minor.

Next, the plaintiff argues that "the liberty interests at stake [in his case] are vastly different" from the liberty interests at stake in Conn. Dep't of Pub. Safety. Dkt. No. 10 at 23. But this argument goes to the first prong of his "stigma-plus" claim—whether he has suffered the deprivation of a right. The court agrees that he has. The fact that the plaintiff has been deprived of

34

significant liberty interests does not distinguish his circumstances from those in <u>Doe</u>.

The plaintiff also argues that "[w]here . . . constitutionally protected freedoms are at stake, courts have held that *Conn. v. Dep't of Pub. Safety v. Doe* does not foreclose procedural due process claims." <u>Id.</u> at 23-24. In the case he cites, however, the plaintiff argued that the Indiana parole guidelines for sex offenders interfered with a fundamental liberty interest—his right to associate with his own children. <u>Bleeke v. Server</u>, No. 1:09-CV-228 PPS APR, 2010 WL 299148 (N.D. Ind. Jan. 19, 2010). Because Bleeke was a sex offender, the Indiana parole guidelines prohibited him from seeing his children, talking to them on the telephone, having a photo of them or attempting to see them. <u>Id.</u> at *1. The Indiana court found that <u>Conn. Dep't of Pub. Safety</u> was inapplicable because the plaintiff in that case had "expressly disavowed" any fundamental liberty interest in need of protection, and because the statute in <u>Conn. Dep't of Pub. Safety</u> took away from the parole board the discretion to determine whether a sex offender must register (whereas the Indiana statute gave the parole board the discretion to require a parolee to avoid all contact with minors). <u>Id.</u> at 12. <u>Bleeke</u> is of no help to the plaintiff; the court already has found that he has not identified a fundamental liberty interest, such as the right to associate with his children, with which Wis. Stat. §301.45 interferes, and the statute does not give the defendant's agency any discretion to decide whether to subject a non-parent convicted of false imprisonment of a minor to the requirements of the statute.

35

The plaintiff asserts that the Seventh Circuit recognized the validity of the "stigma-plus" theory in <u>Schepers</u>. Dkt. No. 10 at 24. He is correct, but the plaintiff ignores a key component of the <u>Schepers</u> decision. Schepers was required to register under Indiana's sex offender registry statute because he'd been convicted of two counts of child exploitation, but somehow he'd erroneously been designated a "sexually violent predator," which subjected him "to the more burdensome requirements and restrictions that appl[ied] to that group." <u>Schepers</u>, 691 at 912. There was no question that Schepers was required to register, but there was no dispute that he did *not* qualify as a sexually violent predator. <u>Id.</u> When he tried to correct the error, Schepers discovered that the Indiana Department of Corrections "provided no official channel or administrative mechanism for allowing him to do so." <u>Id.</u> Schepers filed suit, and while the DOC responded to the suit by creating a procedure for allowing *incarcerated* persons to challenge their classification before release from custody, <u>id.</u>, that procedure did not apply to people already released from custody or who never had been incarcerated (because they received probationary sentences or had been convicted in another state), <u>id.</u> at 912-13. The <u>Schepers</u> court agreed that being misclassified as a sexually violent predator infringed Scheper's liberty interests. <u>Id.</u> at 914-15. It then went on to consider what process was due someone like Schepers—a person who was not in custody and thus had no way to challenge the misclassification.

The plaintiff has not argued that he does not meet the definition of a "sex offender" under Wis. Stat. §301.45(1d)(b). He has not argued that he has no

procedural mechanism for challenging the allegation that he falsely imprisoned the minor victims. Rather, he argues that the legislature should have included a requirement that the state prove some sexual motive or intent for a non-parent convicted of falsely imprisoning a minor to be classified as a "sex offender." That is, as the court has discussed, the plaintiff's *substantive* due process claim, and that claim has no merit.

The same defect dooms the plaintiff's argument that Brown v. Montoya, 662 F.3d 1152 (10th Cir. 2011), supports his procedural due process claim. Brown, like Schepers, involved an incorrect classification under the New Mexico sex offender statute (which is similar to Wisconsin's). Brown's probation officer required him to register as a sex offender because the probation officer believed that Brown's victim was a minor. Id. at 1159. As it turned out, there was no evidence that the victim was minor. Id. The plaintiff is correct that the Tenth Circuit concluded that Brown did not receive adequate process, but it based that decision on its own precedent—Gwinn v. Awmiller, 354 F.3d 1211, 1216 (10th Cir. 2004). Id. at 1169-70. In Gwinn, the Tenth Circuit had held that "a prison inmate is entitled to 'notice of the charges, an opportunity to present witnesses and evidence in defense of those charges, and a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action' before being classified as a sex offender in prison," and the Brown court felt that "[t]he procedural protections owed to a person before being classified as a sex offender outside of prison are at least as extensive as those owed to a prison inmate." Id. (citing Gwinn at 1219, 1222). The plaintiff

has not identified a case in which the U.S. Supreme Court or the Seventh Circuit has held that incarcerated persons are entitled to the same process.

In determining whether the plaintiff was provided due process, this court looks to the three-factor test in Mathews v. Eldridge, 424 U.S. 319 (1976). Under the Mathews test, the court must consider "(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of that interest under the procedures used; and (3) the government's interest and the administrative burdens of proving additional process." Murphy v. Rychlowski, 868 F.3d 561, 567 (7th Cir. 2017) (quoting Mathews, 424 U.S. at 335) (internal quotation marks omitted). The plaintiff argues that he "has stated a claim that Wisconsin's scheme of automatically classifying anyone convicted of non-familial false imprisonment of a minor as a 'sex offender' and subjecting them to the restrictions applicable to individuals who have been convicted of sex offenses does not meet the demands of the Mathews test." Dkt. No. 10 at 26.

The Seventh Circuit addressed the three Mathews factors in the context of sex offender registration in its 2017 decision in Murphy. As to the private interest affected by the official action, the Murphy court found that "[t]he burdens associated with being listed on a [sex offender] registry are significant":

> The Wisconsin Sex Offender Registry is a public and searchable online database that provides a registrant's photograph, name, name and date of offense, and home address. *See generally* Wis. Stat. § 301.45. Registration also limits where an individual can go, *see id.* § 301.475(1) (prohibiting registered sex offenders from being on school premises without notification to the school), or can work,

38

> see id. § 948.13 (prohibiting sex offenders from working with children). It also prohibits an individual from changing his or her name. *See id.* § 301.47. One cannot deny the stigmatizing effect of being erroneously placed on a registry. *See Schepers*, 691 F.3d at 914.

Murphy, 868 F.3d at 567. This factor weighs in favor of finding that the plaintiff was entitled to process.

The Murphy court held, however, that as to the risk of an erroneous deprivation of that interest under the procedures used, the "risk of erroneous registration is low—the statute is based upon one's registration status, a status which requires a criminal conviction." Id. It concluded that "under Wisconsin law, individuals who are placed on the registry have already had a procedurally safeguarded opportunity to contest their status, thereby protecting against an erroneous deprivation." Id. The court also found that Murphy could have contested an erroneous listing by contacting the Wisconsin Department of Corrections. Id.

As to the government's interest and the administrative burdens of proving additional process, the Murphy court held that "the government's interest here cannot be understated," discussing the serious risk posed by sex offenders and noting that registration programs like Wisconsin's are designed to protect the public. Id. at 567-58.

This court comes to the same conclusion as the Murphy court regarding the first Mathews factor—registration imposes significant burdens on non-parents convicted of false imprisonment of a minor. As to the second Mathews factor, however—the risk of an erroneous deprivation of that interest under the

39

procedures used—it is not clear that <u>Murphy</u> is dispositive. It is not clear from the facts on the record that a non-parent convicted of falsely imprisoning a minor already has had a procedurally protected opportunity to contest his or her status. A defendant charged with false imprisonment in violation of Wis. Stat. §940.30 has a procedurally protected opportunity to contest whether he or she falsely imprisoned someone: the defendant may go to trial and ask a jury to decide whether the state can prove beyond a reasonable doubt the five elements of a false imprisonment claim. But none of those elements require the state to prove the *age* of the victim, or to prove that the defendant is *not* the victim's parent. The defendant asserts that the "only fact material to [the plaintiff's] registration requirement" is his false imprisonment convictions, dkt. no. 11 at 13, even though there are two other facts relevant to the registration requirement—whether the victims were minors and whether the plaintiff was a parent of one or both victims.

That said, the plaintiff has not argued that he was deprived of due process because there was no process[4] available to him to challenge whether the victims were minors or whether he was a non-parent, nor has he claimed that the victims were not minors or that he was the parent of either. Thus he

---

[4] The process the plaintiff argues he was due is a process to require the state to show that the false imprisonment had sexual motive or intent. Dkt. No. 10 at 26-27. The court already has rejected the argument that failure to require the state to provide proof of sexual motive or intent violates the Constitution. It also notes that the plaintiff did not describe the process that he believed was due, other than to say that there should be a "minimal requirement that the facts of the plaintiff's conviction support an inference that there was a sexual motive or intent involved in the crime." <u>Id.</u> at 27.

Case 2:20-cv-00317-PP   Filed 03/24/22   Page 40 of 44   Document 18

does not appear to have standing to raise the argument. "The traditional rule is that a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court." New York v. Ferber, 458 U.S. 747, 767 (1982) (citations omitted). The plaintiff "does not contest any facts that would be relevant to the [process] that he claims the Constitution requires," and thus has "suffered no harm that is fairly traceable to the alleged deprivation of process about which he complains." Markadonatos v. Vill. of Woodridge, 760 F.3d 545, 559 (7th Cir. 2014).

The plaintiff has not stated a claim for a violation of procedural due process as it relates to his no-sexual-intent-or-motive argument, and he does not have standing to assert a procedural due process claim relating to whether the victims were minors and whether he was a non-parent. The court will dismiss the procedural due process claim.

## III.    The Motion for a Preliminary Injunction (Dkt. No. 14)

The plaintiff's motion for preliminary injunctive relief is based on his argument that his classification as a sex offender violations his substantive and procedural due process rights. Dkt. No. 14. In the brief in support of the motion, the plaintiff explained that in May 2021, he was diagnosed with a malignant brain tumor and began treatment. Dkt. No. 15 at 2. At the time he filed the motion for injunctive relief, he had received radiation treatment, received a stem-cell replacement treatment and begun taking various medications. Id. He explained that his classification as a sex offender requires

41

him to live in Racine County, but said that Racine has a housing ordinance that has made it impossible for him to find housing there. Id. at 5. The plaintiff explained that the statute has aggravated his health crisis, forcing him "into a virtual state of homelessness" where he sleeps at the houses of friends or outside the woods on the banks of the Root River. Id. He asserted that if he had not been classified a sex offender, he could move to another city (Kenosha, perhaps) and live in a homeless shelter there. Id. at 5-6. He asked the court to "enter a preliminary injunction prohibiting Defendant from continuing to enforce Wis. Stats. §301.45(1d)(b) against him." Id. at 23.

To obtain a preliminary injunction, a plaintiff must show that he is likely to succeed on the merits and that "traditional legal remedies would be inadequate, such that [he] would suffer irreparable harm without the injunction." Life Spine, Inc. v. Aegis Spine, Inc., 8 F.4th 531, 539 (citing Speech First, Inc. v. Killeen, 968 F.3d 628, 637 (7th Cir. 2020)). For the "likely to succeed on the merits" prong, it is not enough for a plaintiff to demonstrate that he has a "better than negligible" chance of success on the merits; he must show that his claim has "some likelihood" of success on its merits. Mays v. Dart, 974 F.3d 810, 822 (7th Cir. 2020) (quoting Eli Lilly and Co. v. Arla Foods, Inc., 893 F.3d 375, 381 (7th Cir. 2018)). The Seventh Circuit has described this as its "sliding scale approach," id. at 821, and explained that what constitutes "some likelihood" "depends on the facts of the case at hand" because of that sliding scale approach, id. at 822 (citing Ty, Inc. v. Jones Group, Inc., 237 F.3d 891, 895 (7th Cir. 2001)).

42

The court has concluded that the Wisconsin legislature's decision to include false imprisonment of minors by non-parents as a sex offense, and to subject defendants convicted of that offense under those circumstances to the various restrictions imposed on sex offenders under Wisconsin law, does not violate either the substantive or procedural due process components of the Fourteenth Amendment. The plaintiff thus has not demonstrated that he has "some likelihood" of success on the merits of either of those two claims. While the court is allowing the plaintiff the opportunity to amend the complaint to assert a Fourth Amendment claim that the requirement of lifetime GPS monitoring is unreasonable as applied to him, success on the merits of that claim, even if likely, would not impact the residency requirements which are causing the harm the plaintiff asserts is irreparable.

No one should be homeless, and no one should have to battle a life-threatening medical condition without having somewhere safe and healthy to live. Perhaps the Wisconsin legislature did not consider the possible collateral consequences of its decision when it decided to include in the definition of sex offenses false imprisonment of minors by non-parents. But that is the decision the legislature made and under Supreme Court and Seventh Circuit precedent, that decision does not violate the Fourteenth Amendment. The court must deny the motion for a preliminary injunction.

IV. **Conclusion**

The court **GRANTS** the defendant's motion to dismiss Claims One and Two. Dkt. No. 8.

43

The court **ORDERS** that if the plaintiff wishes to file an amended complaint to allege a Fourth Amendment claim regarding the lifetime GPS monitoring requirement, he must do so by the end of the day on **April 22, 2022**. If the court does not receive an amended complaint by the end of the day on **April 22, 2022**, the court will dismiss the case for failure to state a claim upon which relief can be granted.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion for a preliminary injunction. Dkt. No. 14.

Dated in Milwaukee, Wisconsin this 24th day of March, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

44